# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1980 | **DATE** | 1/24/2001 |
| **CASE TITLE** | Hinton vs. Snyder | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Mr. Hinton's petition for a writ of habeas corpus is dismissed in part as procedurally barred. Respondent to respond to the remaining Fifth Amendment claim for voluntary confession by 2/16/01; and any reply is due by 3/9/01. Ruling set for 3/23/01 at 10:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 25 2001 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/24/2001 | |
| MPJ | courtroom deputy's initials | JAN 24 PM 6:05 Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials | |

```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

United States of America ex rel.   )
LEONARD HINTON,                     )
                                    )
                Petitioner,         )
                                    )
     v.                             )   No. 00 C 1980
                                    )
DONALD SNYDER, Director,            )
Department of Corrections,          )
State of Illinois,                  )   **DOCKETED**
                                    )
                Respondent.         )   JAN 2 5 2001

## MEMORANDUM OPINION AND ORDER

### I.

Mr. Hinton was arrested on November 25, 1983 on a warrant for aggravated battery.[1] While in custody in the Area 2 police station in Chicago, Illinois, he was questioned about three unrelated murders. Mr. Hinton alleges that he was subjected to torture at Area 2, including being slapped in the face twenty to thirty times, kicked in the stomach, hit in the chin with a gun (causing him to bleed on the jersey he was wearing), suffocated with a plastic bag placed over his head, starved and electrically shocked in the genitals. Among his questioners was Lt. Jon Burge of the Chicago Police Department, an officer who subsequently was fired because of allegations that he had tortured many prisoners to get confessions.

---

[1] I take the facts from the Illinois Appellate Court's ruling on the dismissal of Mr. Hinton's state post-conviction petition. See *People v. Hinton*, No. 1-97-1982 (Ill. App. Ct. Dec. 31, 1998).

See David Jackson, *13 years of cop torture alleged*, Chicago Tribune, Feb. 8, 1992, News, at 1. After three days in custody, Mr. Hinton finally gave in and signed a written statement confessing to the murders. At the hearing on his motion to suppress his confession, Mr. Hinton testified about the alleged abuse and the police officers who testified denied that any abuse had occurred. The circuit court denied his motion, calling it a "credibility question."

Mr. Hinton was tried at a bench trial, and he testified on his own behalf about the alleged abuse, as well as his claim of self defense. On the stand, he admitted that his confession was true, except for part in which he said that one of the victims owed him $200. The jersey he was wearing when he was interrogated was marked for identification, but it was not introduced into evidence. He identified a mark on the shoulder of the jersey as being his own blood from when the police hit him under the chin, but he admitted on cross-examination that it was the same shirt he had worn on the night of the murders.

On September 13, 1985, Mr. Hinton was convicted of six counts of murder for killing three people, and sentenced to six concurrent life sentences. He appealed his sentence directly, and the Illinois appellate court vacated three of the murder convictions, but affirmed Mr. Hinton's convictions and sentences on the remaining three counts. He did not appeal this decision directly

to the Illinois Supreme Court, but he later filed a post-conviction petition in the Circuit Court of Cook County that was dismissed without an evidentiary hearing. The dismissal was affirmed by the Illinois Appellate Court. Mr. Hinton filed a petition for leave to appeal to the Illinois Supreme Court, but the Court denied the petition on March 31, 1999. On March 31, 2000, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising four claims. His petition is dismissed in part because he has procedurally defaulted three of his claims, and I order further briefing on his remaining claim.

II.

Before I may reach the merits of a federal petition for habeas relief from a state prisoner, I must "ensure that the habeas corpus petitioner has overcome two procedural hurdles, exhaustion and procedural default." *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). "Exhaustion" refers to issues that have not been presented to the state court but still may be presented. *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). "Procedural default," on the other hand, "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Id.* One type of procedural default occurs when the prisoner raises claims in his federal habeas petition that he did not raise during the course of the state proceedings.

-3-

*Spreitzer*, 219 F.3d at 644. The Supreme Court recently held the failure to present claims in a petition for leave to appeal to the Illinois Supreme Court constituted procedural default because the prisoner did not raise his claim in all proceedings "available" to him. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999) (where discretionary review is available, prisoner must have raised habeas claims in petition for leave to appeal to avoid procedural default). The Seventh Circuit has applied this rule retroactively. *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999).

III.

The State concedes that Mr. Hinton has exhausted his state court remedies, so I need only consider the question of procedural default.[2] The purpose of the rules of procedural default is to give state courts an opportunity to correct constitutional violations. *Momient-El v. DeTella*, 118 F.3d 535, 540 (7th Cir. 1997). "To this end, a habeas petitioner must present his claims in such a way as to "fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996) (alterations in original). This is the principle of "fair presentment": "both the

---

[2] Although the Supreme Court discussed the requirement of raising all claims at all available levels in terms of the exhaustion doctrine in *Boerckel*, it ultimately held that the failure to assert claims in the state court constituted procedural default. Therefore I analyze any failure to raise claims in both petitions (the habeas petition and the petition for leave to appeal to the Illinois Supreme Court) in terms of procedural default.

-4-

operative facts and the 'controlling legal principles' must be submitted to [the state] court." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). The relevant question is whether the "substance of the federal claim" has been fairly presented, not whether the prisoner has cited "book and verse of the federal constitution." *Bocian*, 101 F.3d at 469 (citing *Verdin*). I should seek to "avoid hypertechnicality" in determining whether a claim has been fairly presented. *Verdin*, 972 F.2d at 1474.

A.

In his Petition for a Writ of Habeas Corpus, Mr. Hinton claims that: (1) the police violated his Fifth Amendment right against self-incrimination by beating and torturing him to obtain his involuntary confession; (2) the prosecution violated his Fifth Amendment due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose allegedly exculpatory information about prior instances of beatings and torture in the same police district; (3) his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel failed to investigate instances of police torture in preparation for the suppression hearing on his confession; and (4) his Sixth Amendment right to effective assistance of counsel was violated when his appellate counsel failed to challenge the voluntariness of his confession.

After *Boerckel*, I may only consider Mr. Hinton's claims on their merits if he raised them in his petition for leave to appeal

-5-

to the Illinois Supreme Court. See 526 U.S. at 848. In his petition for leave to appeal to the Illinois Supreme Court, he raised only two claims: that (1) Mr. Hinton's blood-stained jersey that he wore during his interrogation was sufficient proof of an injury to warrant a hearing on the merits of his involuntary confession claim; and (2) newly discovered evidence of other incidents of police torture constituted "special circumstances" sufficient to permit reconsideration of issues decided at the suppression hearing. Both questions concern the trial court's denial of an evidentiary hearing on his state post-conviction petition, rather than the merits of the substantive claims Mr. Hinton brought in that petition.[3]

Mr. Hinton did not fairly present the question of ineffective assistance of counsel, trial or appellate, in his petition for leave to appeal. He raised neither the operative facts of an ineffective assistance claim nor the governing legal principles, as required by Verdin. 972 F.2d at 1474. He does not mention the

---

[3] In his brief to the Illinois Appellate Court, Mr. Hinton raised six substantive claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) failure of the trial court to conduct a hearing on "systematic torture" at the Area 2 police station; (4) Brady violation for failure to disclose Lt. Burge's history of torturing suspects; (5) due process violation for conviction based on perjured testimony; and (6) abuse of the trial court's discretion for preventing Mr. Hinton from getting reports regarding police brutality.

He renews similar substantive claims in his habeas petition, after his unsuccessful petition for leave to appeal, but it is precisely this kind of midstream change of tactics that leads to procedural default. See Spreitzer, 219 F.3d at 645.

-6-

Sixth Amendment or the governing federal case (*Strickland v. Washington*, 466 U.S. 668 (1984)), nor does he use any language invoking the right to adequate representation. He has not given the state courts a meaningful opportunity to pass on the substance of his ineffective assistance of counsel claims, so they are procedurally barred.

Nor has Mr. Hinton preserved his *Brady* claim. He refers to the internal police investigation reports regarding police brutality, and says that they were not available at trial, but he made no allegations that the police withheld them, or that they were exculpatory evidence. Even if he had presented the operative facts, he failed to identify the controlling legal principle. Although he mentioned the Fifth Amendment in his petition for leave to appeal, he referred to it in the context of the right against self-incrimination, not his due process rights to exculpatory information. In *Bocian v. Godinez*, the Seventh Circuit held that a prisoner had not fairly presented his void-for-vagueness claim where, in his brief before the state court, he merely mentioned the Fourteenth Amendment and cited one Supreme Court case for a proposition other than vagueness. 101 F.3d at 469. The Court held that Bocian had not fairly presented the void-for-vagueness issue to the state court, although he had alluded to the Due Process Clause by reference to the Fourteenth Amendment. *See id.* Mere allusion was not enough, however; the Court held that the prisoner

-7-

must "sketch an argument explaining *why* the conviction violates the Due Process Clause." *Id.* (emphasis added). Mr. Hinton did not "sketch an argument" explaining his *Brady* claim, so it is procedurally barred.

Mr. Hinton did sketch such an argument, however, for his involuntary confession claim. He described the alleged beating and torture he suffered at the hands of the police, and he articulated his argument that the Federal Constitution does not permit police to beat suspects to extract confessions. He mentioned the Fifth Amendment, although he did not specifically invoke the right against self incrimination. His involuntary confession claim was not the crux of his petition for leave to appeal, however; it merely appeared in the context of his arguments that he should have been allowed an evidentiary hearing on his post-conviction petition in the trial court. The Seventh Circuit has not articulated whether it is enough merely to *raise* an argument, or if more is required. *See, e.g., Spreitzer*, 219 F.3d at 645 (suggesting that a prisoner must actually "brief" the issue in question); *Crist v. Dolan*, 151 F.3d 1032, 1998 WL 516760, at *2 n.2 (7th Cir. July 28, 1998) (unpublished decision) (suggesting that prisoner must "expressly argue" the issue). The State does not make this argument, however, so it is waived. I am guided by the Seventh Circuit's admonition to "avoid hypertechnicality," so I find that Mr. Hinton has not procedurally defaulted his involuntary

-8-

confession claim and I will reach it on the merits. I order further briefing on the merits of Mr. Hinton's Fifth Amendment involuntary confession claim.

B.

For the procedurally defaulted claims, I may only reach the merits if Mr. Hinton demonstrates cause for his failure to raise the claims in the state court and actual prejudice from the failure to raise those claims, or if a fundamental miscarriage of justice would result from my failure to hear them. *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). "Cause" means that the failure to raise the claims was due to some external objective impediment, such as the unavailability of the factual or legal bases for a claim, or interference by state officials. *Cawley v. DeTella*, 71 F.3d 691, 696 (7th Cir. 1995). "Prejudice" means that the outcome would have been changed had the error not been made. *Wright v. Clark*, 96 F. Supp.2d 757, 759 (N.D. Ill. 2000). A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Mr. Hinton argues that the "cause" for his failure to raise the defaulted claims in his petition for leave to appeal to the

Illinois Supreme Court was the Supreme Court's decision in *Boerckel*, which came after he filed his petition for leave to appeal. However, The Seventh Circuit has applied *Boerckel* retroactively, see *Rodriguez*, 193 F.3d at 916, and as I have held, reliance on existing Seventh Circuit law is not an external factor that can constitute "cause" to excuse a procedural default. *United States ex rel. Tompkins v. Cowan*, No. 99 C 5777, 1999 WL 1023927, at *2 (N.D. Ill. Nov. 8, 1999). Because Mr. Hinton has failed to demonstrate cause, I need not consider the question of prejudice.

Mr. Hinton also argues that his procedural default should be excused because he is "actually innocent" of the murders by the affirmative defense of self defense. The State suggests that the "actual innocence" exception is available only in capital cases. The Seventh Circuit has never expressly held that to be true, and decisions in other circuits suggest that the "actual innocence" exception is available in non-capital cases. *See Spence v. Supt., Great Meadow Corr. Facility*, 219 F.3d 162, 170-71 (2d Cir. 2000) ("[T]he availability of the 'actual innocence' exception depends not on the 'nature of the penalty' the state imposes, but on whether the constitutional error 'undermined the accuracy of the guilt or sentencing determination.'"); *Johnson v. Cain*, 215 F.3d 489, 495 (5th Cir. 2000) (remanding non-capital case for application of "cause and prejudice" or "actual innocence" exception); *Simpson v. Matesanz*, 175 F.3d 200, 202 (1st Cir. 1999)

(discussing application of "actual innocence" exception in non-capital case). Indeed, this is the only reading that makes sense. How can it be unconstitutional to execute someone who is innocent, but constitutional to jail him?

The State also suggests that the "actual innocence" exception should not apply in this case because Mr. Hinton's claim of self defense amounts to "legal" or technical innocence, but not *actual* innocence. The Seventh Circuit has rejected such an argument where the affirmative defense asserted was insanity. *See Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999). In *Britz*, the Court held that a prisoner need not show that he did not kill his victim to establish "actual innocence;" it was enough for him to prove innocence by the affirmative defense of insanity. *Id.* ("One can kill and yet be innocent of murder."); *see also Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (noting that self defense is a "defense that [bears] on innocence," unlike entrapment); *but cf. Moleterno v. Nelson*, 114 F.3d 629, 636 (7th Cir. 1997) (holding that prisoner made no claim of "actual" innocence as opposed to "legal" innocence where prisoner argued self defense at trial, but without discussing prisoner's arguments on habeas). At least one other court in this district and one circuit court have expressly rejected the State's argument that self defense constitutes "legal" but not "actual innocence." *See United States ex rel. Bell v. Pierson*, No. 99 C 6467, 2000 WL 1810235, at *5 (N.D. Ill. Dec. 7,

-11-

2000) (Shadur, J.) (ability to demonstrate self defense would have established prisoner's actual innocence of crime charged); *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999) (failure to consider eyewitness testimony in context of self-defense claim would constitute fundamental miscarriage of justice). One who kills in self defense is not guilty of murder, *Gilmore v. Taylor*, 508 U.S. 333, 360 (1993), so although he killed, he is *innocent* of murder. This is distinct from one who murders another, but should not have been convicted because the State did not produce sufficient evidence of guilt beyond a reasonable doubt. While this person may technically be "legally innocent" because she should not have been convicted, she is *not actually innocent* of the crime with which she was charged. *See Enoch v. Gramley*, 861 F. Supp. 718, 729 (N.D. Ill. 1994) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). I predict that the Seventh Circuit would hold that new evidence of self defense would constitute "actual innocence."

Nevertheless, Mr. Hinton's claim of actual innocence must fail, due in part to its unusual nature: all of the claims in his habeas petition relate to the involuntariness of his confession, not to his affirmative defense of self defense, yet he claims that he is actually innocent because he acted in self defense.[4] He apparently was unable to persuade the trial judge of his innocence

---

[4] Mr. Hinton must concede that an involuntary confession would not itself constitute "actual innocence."

-12-

by self defense, no doubt because his confession was admitted. But I may not consider an excuse of "actual innocence" to overcome procedural default unless the prisoner comes forward with new evidence that was not available at trial and that "show that it is more likely than not that no reasonable juror would have convicted him *in light of the new evidence*." *Schlup v. Delo*, 513 U.S. at 324, 327 (emphasis added). The new evidence offered by Mr. Hinton, his bloodstained jersey and the incident reports regarding Area 2 police brutality, relate to his claim that his confession was involuntary, not to his claim of self defense. Even if I accepted his new evidence of the involuntariness of his confession as conclusive, the evidence has no bearing on his claim of self defense. Mr. Hinton argues that, without his confession, he would not have been convicted because the State offered no eyewitness testimony and the testimony of one of the State's witnesses was not credible on other grounds. This relates to sufficiency of the evidence, however, not actual innocence. I will not consider Mr. Hinton's procedurally barred claims.

IV.

Mr. Hinton's Petition for a Writ of Habeas Corpus is DISMISSED IN PART as procedurally barred. I reserve ruling on his remaining Fifth Amendment claim for involuntary confession, and I order the State to respond on the merits, and allow Mr. Hinton to reply. I will consider Mr. Hinton's request for an evidentiary hearing when

-13-

I consider the merits of his claim.

ENTER ORDER *Elaine E Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: January 24, 2001

Copies are being mailed to:

Pamela M. Leeming
Cook County Public Defender's Office
69 W. Washington, 16th Floor
Chicago, IL 60602

Attorney for Petitioner

Michael M. Glick
Illinois Attorney General's Office
100 W. Randolph Street, 13th Floor
Chicago, IL 60601

Attorney for Defendant